AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States District Court
Southern District of Texas
FILED

APR 15 2019

David J. Bradley, Clerk

| | |
|---|---|
| United States of America<br>v.<br>Michael Angelo HERRERA<br>USC<br>YOB: 1982 | Case No. M-19-0828-M |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __12/17/2015 and 03/17/2016__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. Section 841(A)(1)<br>Title 18 U.S.C. Section 2<br>Title 18 U.S.C. 1956 | Possession with the intent to distribute more than 5 kilograms of cocaine, a schedule II controlled substance, Aiding and Abetting, Conspiracy to Launder Money |

This criminal complaint is based on these facts:

See attached "Affidavit"

☑ Continued on the attached sheet.

Approved for filing
pppredit 4/15/2019

_____
Complainant's signature

Ronathan Persaud, DEA Task Force Officer
Printed name and title

Sworn to before me and signed in my presence.

Date: __April 15, 2019__
            11:20 am

_____
Judge's signature

City and state: __McAllen, Texas__

Peter E. Ormsby, U.S. Magistrate Judge
Printed name and title

**ATTACHMENT A**

I, Ronathan Persaud, Task Force Officer of the United States Drug Enforcement Administration (DEA), being duly sworn, depose and state the following:

1. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been deputized by the Drug Enforcement Administration (hereinafter DEA) since November 2016 and a license peace officer with the Harris County Sheriff's Office, in Houston, Texas, for Eleven (11) years prior to becoming a Task Force Officer with DEA. I am currently assigned to the DEA Houston Division Office. During my time as a law enforcement officer, I have participated in investigations of unlawful narcotics distribution and have conducted or participated in physical and electronic surveillances, undercover transactions, the execution of search warrants, debriefing of informants and reviews of taped conversations and drug records. Through my training, education and experience, I have participated in and have conducted investigations that have resulted in the arrests of individuals who have smuggled, received, and distributed controlled substances, as well as the seizure of illegal drugs and proceeds derived from the sale of those illegal drugs. In addition, I have conducted, in connection with these and other cases, follow-up investigations concerning the concealment of narcotics-produced assets, money, bank records, etc., and the identification of co-conspirators through the use of ledgers, telephone bills and records, and photographs, as related to drug trafficking.

2. The statements made in this Affidavit are based in part on: (a) my personal participation in this investigation; (b) information provided to me by other law enforcement

officers; and (c) the training and experience of myself and other law enforcement agents and officers.

3. In early September 2015, Agents/Officers recruited Michael Angelo **HERRERA** (hereinafter **HERRERA**) as a Confidential Source (CS) to assist DEA personnel regarding an ongoing investigation. It was revealed through the course of the investigation that **HERRERA** was in direct telephonic contact with Juan Alberto VILLALOBOS (hereinafter VILLALOBOS) who was a target and leader within a Drug Trafficking Organization (DTO) and a focus of a DEA Houston investigation. Based on information provided by **HERRERA**, on December 11, 2015, United States District Judge Sim Lake, Southern District of Texas, signed an Order authorizing the interception of wire communications to and from a Sprint cellular telephone, assigned number 281-865-2005, and used by VILLALOBOS. On December 12, 2015, the court-authorized interceptions of wire communications to and from said telephone commenced.

4. On December 17, 2015, while reviewing intercepted calls between **HERRERA** and VILLALOBOS, VILLALOBOS advised **HERRERA** that he (VILLALOBOS) had "20" that VILLALOBOS was taking to **HERRERA**, and instructed **HERRERA** to locate a buyer, later determined to be DeAllen NETTLES (hereafter NETTLES) who subsequently became a target of the investigation. **HERRERA** had previously identified NETTLES as a freelance/independent courier within the organization responsible for receiving cocaine and currency from VILLALOBOS and later distributing said cocaine and currency to buyers/sellers in Houston, Texas, Chicago, Illinois and other locations throughout the United States.

5. On December 18, 2015, Agents/Officers debriefed **HERRERA** in Houston, Texas. During the debriefing, **HERRERA** informed Agents/Officers that VILLALOBOS delivered 23 kilograms of cocaine to **HERRERA**, and instructed **HERRERA** to locate a buyer for the cocaine.

3

**HERRERA** told Agents/Officers that he in turn released the cocaine to NETTLES, who advised the cocaine would be transported to Chicago, Illinois to sell. It should be noted that **HERRERA** conducted this transaction outside of the knowledge of controlling Agents/Officers. **HERRERA** also informed agents of two (2) additional occasions where VILLALOBOS provided **HERRERA** with kilogram quantities of cocaine outside of the knowledge of Agents/Officers. **HERRERA** stated that in all three above noted occasions, **HERRERA** was provided with the cocaine and **HERRERA** subsequently provided the cocaine to NETTLES. **HERRERA** stated NETTLES then transported the cocaine loads to the Chicago, Illinois area to sell. Upon discovering that **HERRERA** conducted the aforementioned narcotics transactions outside the knowledge of controlling Agents/Officers, **HERRERA** no longer received financial compensation or government benefits for any information provided regarding the VILLALOBOS DTO.

6. On Thursday, March 15, 2016, at approximately 3:06 p.m., DEA Houston Special Agent (SA) Amin Rosado conducted a debriefing of **HERRERA** concerning the recent activities VILLALOBOS. During the telephonic debriefing, HERRERA advised SA Rosado that the last remaining load of United States Currency (USC) derived from the sale of the 23 kilograms of cocaine in Chicago by NETTLES was being transported from Chicago, Illinois to Houston, Texas. **HERRERA** estimated the USC to be in the amount $90,000.00.

7. On Thursday, March 17, 2016, Agents/Officers conducted a debriefing of **HERRERA**, concerning the recent activities of VILLALOBOS, hereafter VILLALOBOS. **HERRERA** advised Agents/Officers that on or about March 10, 2016, VILLALOBOS DTO member Uriel MAYORQUIN-Carrillo (hereinafter MAYORQUIN-Carrillo) called **HERRERA** asking about the remaining $90,000.00. It should be noted that MAYORQUIN-Carrillo was believed to be in Mexico during this conversation. While communicating with MAYORQUIN-

Carrillo, MAYORQUIN-Carrillo allegedly passed the cellular telephone to DTO head Santiago VILLALOBOS III (hereafter S. VILLALOBOS III), who advised **HERRERA** that he still owed $117,000.00 not $90,000.00. **HERRERA** claimed that he advised VILLALOBOS III that NETTLES only owed $90,000.00. According to **HERRERA**, S. VILLALOBOS III advised **HERRERA** that he (S. VILLALOBOS III) did not care what HERRERA believed and that the remaining debt was $117,000.00. **HERRERA** further stated S. VILLALOBOS III then advised **HERRERA** that he needed to pay at least half of the remaining debt prior to receiving any more "work" (work is a reference to the transfer/purchase of kilogram quantities of cocaine). S. VILLALOBOS III also advised **HERRERA** that if half of the debt was paid, **HERRERA** could "work off" the remaining debt.

8. Agents/Officers then questioned **HERRERA**, why S. VILLALOBOS III believed that the remaining debt was $117,000.00 and not $90,000.00. **HERRERA** claimed that VILLALOBOS must have been "skimming off the top" as drug proceeds were being delivered to S. VILLALOBOS III.

9. **HERRERA** informed Agents/Officers that NETTLES was having trouble selling the remaining three (3) kilograms of cocaine from the 23 kilograms that was previously given to him (NETTLES) in December 2015. Furthermore, NETTLES requested to bring back the "bad dope", but according to **HERRERA**, MAYORQUIN-Carrillo advised **HERRERA**, that the DTO did not want the cocaine returned. **HERRERA** further advised Agents/Officers that NETTLES then gave the three (3) kilograms of cocaine to an unknown target in the Chicago area. **HERRERA** claimed that NETTLES had not heard from the unknown target and/or was unable to locate the unknown target in order to pay the remaining $90,000.00.

5

10. On March 17, 2016, at approximately 5:41 p.m., SA Rosado contacted **HERRERA** via text, informing **HERRERA** that the aforementioned $90,000.00 debt must be derived from NETTLES or the NETTLES DTO. **HERRERA** was further advised that personal funds could not be used to repay the debt to the VILLALOBOS DTO. At approximately 6:36 p.m., **HERRERA** contacted SA Rosado advising that he/she "didn't want to lie anymore" and stated that "NETTLES already paid $90,000.00 for the remaining debt" that was owed to the VILLALOBOS DTO. **HERRERA** further stated that he "took possession of the money therefore no debt was going to be paid". **HERRERA** further advised SA Rosado that after obtaining the currency from NETTLES, he spent $50,000.00 and was still in possession of approximately $40,000.00 of the original $90,000.00. **HERRERA** was then asked what he spent the $50,000.00 on. **HERRERA** claimed that he had unsettled debts that were owed to different organizations prior to officially being utilized by Agents/Officers. SA Rosado then notified **HERRERA** that he/ needed to relinquish the remaining $40,000.00 to Agents/Officers.

11. Thus, on March 17, 2016, at approximately 8:11 p.m., Agents/Officers met with **HERRERA** at 7300 W. Greens Rd. Houston, Harris County, Texas. Upon meeting **HERRERA**, Agents/Officers were informed by **HERRERA** that he was in possession of USC that had been received from NETTLES. **HERRERA** further informed Agents/Officers that the USC was the proceeds from the aforementioned narcotics **HERRERA** debt owed to the VILLALOBOS DTO for cocaine that was sold in Chicago, Illinois. Agents/Officers then documented the termination of **HERRERA**.

12. Your Affiant believes that there is probable cause that on or about December 17, 2015 and March 17, 2016, in the Southern District of Texas, **HERRERA** violated Title 21 U.S.C., Section 841(A)(1), Possession with the intent to distribute more than five (5) kilograms of cocaine,

a schedule II controlled substance and Title 18 U.S.C., Section 2, Aiding and Abetting and Conspiracy to Launder Money, in violation of Title 18 U.S.C §1956.

Ronathan Persaud
Task Force Officer
Drug Enforcement Administration

SUBSCRIBED AND SWORN TO before me this 15th day of March, 2019 and I find probable cause.

PETER E. ORMSBY
United States Magistrate Judge
Southern District of Texas